1014

CITY OF NORTH LITTLE ROCK v. ARK. POWER & LIGHT CO.

5-3329 386 S. W. 2d 236

Opinion delivered February 1, 1965.

*Glenn G. Zimmerman* and *William G. Fleming,* for appellant.

*House, Holmes & Jewell,* for appellee.

JIM JOHNSON, Associate Justice. This suit involves a purchase contract between a municipality and a utility.

In March 1950 appellant City of North Little Rock and appellee Arkansas Power & Light Company entered into a contract in which the city agreed to purchase all the electric power it needed to supply the municipally-owned electrical distribution system serving North Little Rock and certain adjacent areas. The company had been serving the city under a ten-year contract entered into in 1943, but due to its growth the city was unable to receive an adequate power supply through the one point of delivery then existing. To improve and increase the electric supply, the city built a new transformer station and the company constructed an additional point of delivery to the new transformer station. The contract, which was incorporated into a city ordinance, sets out, *inter alia,* the net monthly rates, kilowatt demand, term, discount and service regulations. The city was billed and paid according

to the 1950 rate until January, 1957, when an additional charge of two mills per kilowatt was added to the billings. This increase was made following a Public Service Commission order allowing such an increase for all bills under a number of filed Rate Schedules, including Schedule 21 for "Large Public Utility Resale Customers". Another increase was added in May, 1957, following a Commission allowance of a fuel adjustment in Rate Schedule 21. The city paid the increased bills until August 1960, at which time it refused to pay any charges in excess of the 1950 rate.

On April 20, 1961, appellant filed suit in Pulaski Circuit Court against appellee to recover $669,934.95 allegedly paid in excess of the contract rate from January 1957 through July 1960. Appellee counterclaimed for $230,472.91, the amount in excess of the alleged contract rate for which the city had been billed but refused to pay from August 1960 through May 1961. Trial was held before the court on June 12, 1963. In its judgment entered October 30, 1963, the court dismissed appellant's complaint and granted appellee judgment for $269,334.06 after finding that appellant had "wrongfully withheld payment of lawful billings" for electric service in the total sum of $230,472.91 plus six percent interest. The city has prosecuted this appeal from the judgment, urging several interesting points for reversal.

The appellee power company in turn eloquently argues additional theories to sustain its point of view, all of which results in a lively discussion spanning a large portion of the entire field of utility regulation.

Owing to the simplicity of the question decisive of this case we find it unnecessary to unduly extend this opinion by discussing the myriad questions urged for our consideration.

The portions of the contract germane to this appeal are as follows:

"1. Company will make available to City at the points of delivery specified herein, electric service up to a maximum of 19,000 KW, at approximately 13,800

volts, 3 phase and a nominal frequency of 60 cycles per second.''

''3. Company will supply and City will take and pay for all electric service required by City for the above operation in accordance with the following rate schedule; but no monthly bill for electric service will be based on less than 2,000 KW or less than $2,576.64 during the term of this agreement or any extension thereof. *Said Rate Schedule is subject to such changes as may be lawfully made . . .*

*Net Monthly Rates*
$980.00 for the first 500 KW or less of Demand
 1.25 per KW for all additional KW of Demand
 0.60¢ per KWH for the first 360,000 KWH
 0.50¢ per KWH additional, up to a total consumption of 360 KWH per KW of Demand
 0.38¢ per KWH for all additional KWH

Minimum:
The Demand Charge for the current month, but not less than $1.50 per KW of the highest Demand established during the 12 months ending with the current month.

Adjustment:
*The above rate shall be subject to an increase or decrease in proportion to the amount of new taxes or increased taxes which the Company may hereafter have to pay, which are levied or imposed or increased or decreased by laws which are not in effect on June 1, 1941, provided, however, that this adjustment shall only be applied when authorized by order of the Public Service Commission . . .*

*Term and Primary Service Discount*
5% discount for a new 10 year Agreement for Electric Service.

5% Primary Service Discount for City owning and maintaining all of the substations (except metering equipment). Service will be metered at 13.8 KV.

*Service Regulations*

*Service under this Schedule is subject to the Service Regulations of the Company as they are now on file, and as they may in the future be filed, with the Arkansas Public Service Commission. . . .*

"5. All bills for electric service hereunder shall be rendered monthly, are due upon presentation and are payable within 30 days from the date thereof at the Company's office in Little Rock, Arkansas . . ."

"8. The term of this Agreement shall be from June 1, 1950 to June 1, 1960, and shall be automatically extended for successive periods of one year until terminated by written notice given by one party to the other not more than six months nor less than three months prior to the expiration of the original term or any anniversary thereof.

"9. This constitutes the entire and only Agreement between the parties hereto with reference to the subject matter hereof, and supersedes all previous understandings whether written or oral." [Emphasis ours.]

A careful study of this contract indicates that the contract is quite complete and answers virtually any question within its four corners. Most of the references in the contract to the Public Service Commission are self-limiting and are obviously applicable only to the particular clause in which it is mentioned. However, the phrase at the close of the first paragraph of Section 3, "Said rate schedule is subject to such changes as may be lawfully made," is ambiguous. It is argued by appellee that the phrase implies Public Service Commission supervision, whereas appellant argues, au contraire, that the phrase is limited to those changes provided for in the contract itself. With such an ambiguity it is necessary for us to look outside the contract for interpretation of this phrase. *Yellow Cab Co. of Texarkana v. Texarkana Municipal Airport*, 230 Ark. 401, 322 S. W. 2d 688.

By reference to the evidence, we find (1) that the rate schedule contained in the 1943 contract was identical

with Schedule 21, as was the "Net Monthly Rates" provision, *supra,* of the 1950 contract; (2) that when appellee sought a rate increase before the Commission, appellant had notice of the proceedings and specifically ordered its city attorney to appear at the hearings; and (3) that the increased billings following the Commission's order were paid by the city without protest for three years or more. These facts, with the uncontradicted testimony of the now-retired manager of the City's electrical department that when he received each bill "we checked it with our daily readings and power cost and then checked the calculation of it and if everything was correct I would sign the affidavit and in turn turn it over to the Mayor's office and the Board of Public Affairs approved it and take it down stairs and it was approved by the Chairman of the Electric Committee," after which the city council "approved the payment of it," all of which leaves no doubt that the parties intended to be bound by Rate Schedule 21 as approved by the Commission.

It follows, therefore, the ambiguous language in the contract, "Said rate schedule is subject to such changes as may be lawfully made," means that this rate schedule is subject to such changes as the Commission may make in Rate Schedule 21.

Affirmed.